UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TMCO LTD., <br><br> Petitioner, <br><br> v. <br><br> GREEN LIGHT ENERGY SOLUTIONS R&D CORP., <br><br> Respondent. | Case No. 4:17-cv-00997-KAW <br><br> **ORDER GRANTING PETITION TO CONFIRM ARBITRATION AWARD AND ENTER JUDGMENT** <br><br> Re: Dkt. Nos. 1, 26-28 |

On February 27, 2017, Petitioner TMCO Ltd., a Bulgarian company, filed a petition to confirm an arbitration award (the "Final Award") entered against Respondent Green Light Energy Solutions R&D Corp., a California corporation. The Award was issued by the sole arbitrator of the International Chamber of Commerce's Court of Arbitration ("ICC"), pursuant to an arbitration clause contained in the relevant contract between the parties.

Upon review of the moving papers, the Court finds this matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), and, for the reasons set forth below, CONFIRMS the Final Award.

## I. BACKGROUND

Petitioner TMCO, a Bulgarian company, specializes in heavy machine-building. Respondent Green Light Energy Solutions R&D Corp. ("Green Light"), a California company, specializes in "turn-key" waste processing machines.

On or about February 6, 2012, Petitioner and Respondent executed a written contract (the "Contract"), under which TMCO was to produce and Green Light was to purchase equipment parts (the "Products"). (Pet., Dkt. No. 1-1 ¶ 8; Contract, Decl. of Tom Schoors, "Schoors Decl.," Dkt. No. 1-4 ¶ 6, Ex. 1.) On the same date, Petitioner and Respondent also executed a document

entitled "Special Terms of Sale of Products No. 1" ("Special Terms No. 1") and a document entitled "Specification No. 1" ("Specification No. 1"), forming part of the Contract. (Pet. ¶ 8; Schoors Decl. ¶ 6, Ex. 1.)

On or about November 22, 2012, Petitioner and Respondent executed an amendment to the Contract ("the Amendment"), which allowed Green Light additional time to pay for the Products. (Pet. ¶ 10; Amendment, Schoors Decl. ¶7, Ex. 2). The Contract contained an arbitration provision requiring that all disputes be submitted to binding arbitration to take place in the British Chamber of Commerce, London, Great Britain. (Pet. ¶ 10; Contract at 12.) The provision further provided that the arbitration language required would be English, and that "[t]he material law subject to the Contract is the legislation of Belgium." Id.

A dispute arose between the parties pertaining to Green Light's failure to take delivery of and pay for the Products. (Pet. ¶ 11.) On November 28, 2014, Petitioner filed its Request for Arbitration with the ICC Secretariat. (Pet. ¶ 12; Req. Arbitration, Schoors Decl. ¶ 13, Ex. 3.) On February 25, 2015, Respondent filed an Answer to the Request for Arbitration. (Pet. ¶ 12; Answer, Schoors Decl. ¶14, Ex. 4). On February 6, 2015, the ICC International Court of Arbitration transmitted the file to Johan Lambers, the sole arbitrator of the proceedings (the "Sole Arbitrator"). (Pet. ¶ 13.) On March 24, 2015, the Sole Arbitrator signed the Terms of Reference, which was later signed by both parties. (Pet. ¶ 13; Schoors Decl., Ex. 5.) The Sole Arbitrator followed the procedure proscribed by the ICC Rules of Arbitration, and Green Light fully participated in the proceedings. (Pet. ¶ 14.)

On January 20, 2016, the Sole Arbitrator issued the Final Award, and resolved the dispute in favor of Petitioner TMCO ("Claimant"):

> 16. THE ARBITRATOR'S AWARD ON THE PARTIES' RELIEF
> For all the reasons stated hereinabove, and rejecting all other requests, claims and reliefs, the Arbitrator:
>
> 1. Decides that the Contract is rescinded for the remaining 12 sets of Products.
>
> 2. Orders Respondent to pay Claimant EUR 646,695.13 for the first two sets of Products, plus interest compensation for late payment at the interest rate due under article 5 of the Belgian Law of 2 August 2002 on the combat against late payment in commercial

2

transactions, as from 23 December 2012 until the date of full and entire payment;

3. Orders Respondent to pay Claimant compensation for conservation costs in the amount of EUR 176,250.00;

4. Orders Respondent to pay Claimant compensation for the cost of materials in the amount of EUR 34,466.80 plus interest at the Belgian legal rate, determined by article 2 §1 of the law of 5 May 1865 on loan at interest as from 18 December 2012, until the date of full and 15 entire payment;

5. Orders Respondent to pay Claimant, for its loss of profit for the remaining 12 sets of Products, the total amount of EUR 864,503.76 plus interest at the Belgian legal rate, determined by article 2 § 1 of the law of 5 May 1865 on loan at interest, as from 18 December 2012, until the date of full and entire payment;

6. Orders for Respondent to take delivery of the first two sets of Products in accordance with Article 5.2 of the Contract within 15 days after the payments pursuant to point (2) and (3) above.

7. Orders that if Respondent fails to take the delivery of the first two sets of Products pursuant to point (6) above, Claimant may dispose of these Products at its convenience and without any possible claim or recourse by Respondent;

8. Decides that the costs fixed by the Court are borne by Respondent; consequently, Respondent shall reimburse to Claimant USD 107,000 towards these costs;

9. Respondent shall bear its own legal and other costs and shall pay Claimant EUR 76,052.54 corresponding to Claimant's legal and other costs.

10. All other requests, claims and reliefs are dismissed.

(Pet. ¶ 15; Final Award, Schoors Decl. ¶ 16, Ex. 6 at 67.) To date, Green Light has not sought clarification or correction of the Final Award, nor have any payments been made. (Pet. ¶¶ 18, 20.)

On February 27, 2017, Petitioner filed a petition to confirm the Final Award. (Pet., Dkt. No. 1.) On July 17, 2017, Respondent filed a brief in support of its opposition to confirm the Final Award. (Resp't's Br., Dkt. No. 26.) On August 3, 2017, Petitioner filed a reply to Respondent's brief. (Pet'r's Reply, Dkt. No. 27.) On August 14, 2017, Respondent filed a reply brief. (Resp't's Reply, Dkt. No. 28.)

## II. LEGAL STANDARD

The United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention") governs the "recognition and enforcement" of all foreign arbitral awards

in United States courts. 9 U.S.C. § 201. Under the Convention, a district court "shall" confirm a foreign arbitration award unless the party opposing confirmation can establish one of the defenses enumerated in Article V of the Convention. 9 U.S.C. § 207. "Under the Convention, a district court's role is limited—it must confirm the award unless one of the grounds for refusal specified in the Convention applies to the underlying award." *Admart AG v. Stephen & Mary Birch Found., Inc.*, 457 F.3d 302, 307 (3d Cir. 2006), as amended on reh'g (Sept. 28, 2006) (citation omitted).

Specifically, the Court may only refuse to confirm an arbitration if the party resisting confirmation can prove:

> (a) The parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or
>
> (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or
>
> (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or
>
> (d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or
>
> (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made [or]
>
> ...
>
> [ (f) ] The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or
>
> (g) The recognition or enforcement of the award would be contrary to the public policy of that country.

*Id.* at 307−308 (quoting Convention art. V).

Public policy strongly favors the confirmation of international arbitration awards.

4

*Polimaster Ltd. v. RAE Sys., Inc.*, 623 F.3d 832, 836 (9th Cir. 2010). "Extensive judicial review frustrates the basic purpose of arbitration, which is to dispose of disputes quickly and avoid the expense and delay of extended court proceedings." *Parsons & Whittemore Overseas Co. v. Societe Generale De L'Industrie Du Papier (RAKTA)*, 508 F.2d 969, 977 (2d Cir. 1974) (internal citations omitted). "Thus, confirmation proceedings are necessarily summary' in nature and are 'not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm.' *BU8 Sdn. Bhd. v. CreAgri, Inc.*, No. C-14-4503-EMC, 2015 WL 1010090, at *3 (N.D. Cal. Mar. 6, 2015) (quoting *Marker Volkl (Int'l) GmbH v. Epic Sports Int'l, Inc.*, 965 F. Supp. 2d 308, 311 (S.D. N.Y. 2013)).

The party defending against enforcement of the award bears the burden of proving one of the Convention's enumerated defenses. *See Empresa Constructora Contex Limitada v. Iseki, Inc.*, 106 F. Supp. 2d 1020, 1024 (S.D. Cal. 2000); *see also Injazat Tech. Fund, B.S.C. v. Najafi*, No. C 11–4133 PJH, 2012 WL 1535125, at *2 (N.D. Cal. May 1, 2012). The "burden is substantial because the public policy in favor of international arbitration is strong, and the New York Convention defenses are interpreted narrowly." *Polimaster*, 623 F.3d at 836.

## III. DISCUSSION

### A. Confirmation of the Arbitration Award is Appropriate

There is no dispute that the New York Convention governs the Court's review of the Final Award. (Pet. ¶ 4; Resp't's Br. at 4.) Courts asked to confirm foreign arbitration awards pursuant to the Convention "shall confirm the award" unless the party opposing confirmation can establish one of seven specific defenses. 9 U.S.C. § 207. Here, Respondent argues that the enforcement of the award would be contrary to public policy and that the enforcement of specific performance is not feasible. (Resp't's Br. at 4-5.)

#### i. Specific Performance

As an initial matter, the issue of whether Petitioner is able to specifically perform—furnish the first two sets of Products—is not properly before the Court. That Respondent attempts to characterize this as a need for additional discovery does not entitle it to the relief sought, namely avoiding the confirmation of the Final Award. Moreover, the Sole Arbitrator specifically

5

required payment of the Final Award before Respondent was entitled to take delivery of the first two sets of Products. (Dkt.No. 1-4 at 143.) To date, no payments have been remitted. Respondent is not entitled to inspection or reasonable assurances regarding the availability of the products prior to payment. *See id.*

Thus, whether Petitioner is able to perform in accordance with the Final Award is irrelevant at this juncture, and is not a valid reason to deny confirmation.

### ii. Public Policy

In opposition to confirmation, Respondent argues that Final Award is contrary to public policy, because it requires Green Light to pay for the two sets of products and for TMCO's lost profits without taking delivery of the Product, which is inherently unfair. (Resp't's Br. at 5.) Petitioner argues that alleged unfairness due to the potential impossibility of specific performance does not fall within the purview of the public policy exception. (Pet'r's Reply at 8.) The Court agrees.

The public policy exception is narrowly construed. *Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, 665 F.3d 1091, 1097 (9th Cir. 2011) (citing *Parsons*, 508 F.2d at 974). The Convention's public policy defense, Article V(2)(b), states:

> Recognition and enforcement of an arbitral award may ... be refused if the competent authority in the country where recognition and enforcement is sought finds that ... (b) The recognition or enforcement of the award would be contrary to the public policy of that country.

N.Y. Convention, art. V(2). "It applies only when confirmation or enforcement of a foreign arbitration award 'would violate the forum state's most basic notions of morality and justice.'" *Ministry of Def.*, 665 F.3d at 1097 (quoting *Parsons*, 508 F.2d at 974). The defense is so narrowly construed that it is rarely successful. *Ministry of Def.*, 665 F.3d at 1097 (citation omitted). Indeed, to prevail, Respondent must demonstrate a countervailing public policy sufficient to overcome the strong policy favoring confirmation of the Final Award. *See Ministry of Def.*, 665 F.3d at 1098.

Here, Green Light argues that public policy requires that it be provided assurances that the Product is available—such as an inspection— before it remits payment. (Resp't's Br. at 5;

6

Resp't's Reply at 2.) In opposition, Petitioner contends that specific performance is not required by the Final Award. (Pet'r's Reply at 9.) In fact, the only performance that is required is that Respondent is required "to take delivery of the first two sets of Products in accordance with Article 5.2 of the Contract within 15 days after the payments pursuant to point (2) and (3)." (Pet'r's Reply at 9 (citing Final Award at 67).) Indeed, as set forth above, the Final Award requires Green Light to pay points (2) and (3) before taking delivery of the Product, and that condition precedent has not occurred. *See* discussion *supra* Part III.A.i. Green Light's claim that the products do not exist is, at this juncture, purely conjecture, and an attempt to add additional terms to the Final Award. Should it turn out that the products do not exist, Green Light would potentially have an actionable breach of contract claim before the arbitrator. Notwithstanding, the purported anticipatory breach of contract claim is too speculative to fall within the Convention's public policy exception.

Accordingly, the Court finds that Green Light has failed to show that the public policy defense is applicable, and, thus, the undersigned confirms the Award.

### B. Attorneys' fees

In the Petition, TMCO asks for an award of attorneys' fees in the amount of $30,000. (Pet. at 5.) Specifically, Petitioner seeks $20,000 incurred in the preparation of the petition, and $10,000 in anticipated fees incurred "in connection with the Opposition and Reply briefs to this Petition, and the appearance at the hearing thereon." *Id.*

Petitioner has not, however, demonstrated that it is entitled to have its fees borne by Respondent. Petitioner has not furnished any information regarding hourly rates, the number of hours billed, or who worked on the Petition and subsequent brief, such that it is impossible for the Court to perform even a cursory review of the fees sought to determine reasonableness under the lodestar method. *See Chalmers v. City of L.A.*, 796 F.2d 1205, 1210 (9th Cir. 1986) ("In determining reasonable hours, counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended"); *see also eADGEAR, Inc. v. Liu*, No. CV-11-5398 JCS, 2012 WL 2367805, at *20 (N.D. Cal. June 21, 2012) (recommending the denial of attorney's fees where counsel failed to provide time sheets or affidavits in support of their request).

Accordingly, the Court declines to award Petitioner its attorneys' fees incurred in filing the petition.

## IV. CONCLUSION

In light of the foregoing, the Court GRANTS TMCO's Petition to Confirm the Arbitration Award. Specifically, TMCO is entitled to a total sum of EUR €1,797,968.23, and USD $107,000.00, as follows:

(1) First two sets of Products (€EUR): €646,695.13, plus interest;

(2) Conservation costs (€EUR): €176,250.00, plus interest;

(3) Compensation for cost of materials (€EUR): €34,466.80, plus interest;

(4) Loss of profit for the remaining 12 sets of Products (€ EUR): €864,503.76, plus interest;

(5) Costs fixed by the ICC Court ($USD): $107,000.00; and

(6) Legal costs regarding arbitration proceedings (€EUR): €76,052.54.

Petitioner is also awarded interest, at the interest rate due under article 5 of the Belgian Law of 2 August 2002 on the combat against late payment in commercial transactions, on awards (1)-(4) from the date of Final Award until the date of full and entire payment.

IT IS SO ORDERED.

Dated: November 14, 2017

KANDIS A. WESTMORE
United States Magistrate Judge