**MUSICK, PEELER & GARRETT LLP**
ATTORNEYS AT LAW
ONE WILSHIRE BOULEVARD, SUITE 2000
LOS ANGELES, CALIFORNIA 90017-3383
TELEPHONE (213) 629-7600
FACSIMILE (213) 624-1376

Nathan D. O'Malley (State Bar No. 212193)
n.omalley@mpglaw.com
Peter J. Diedrich (State Bar No. 101649)
p.diedrich@mpglaw.com
Rebecca S. Hummel (State Bar No. 311742)
r.hummel@musickpeeler.com

Attorneys for Petitioner, TMCO, LTD

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| TMCO LTD,<br><br>        Petitioner,<br><br>        vs.<br><br>GREEN LIGHT ENERGY SOLUTIONS R&D CORP.,<br><br>        Respondent. | CASE No. 4:17-CV-00997-KAW<br><br>**JUDGMENT CREDITOR TMCO, LTD.'S NOTICE OF MOTION AND MOTION FOR LEAVE TO AMEND JUDGMENT TO ADD ALTER EGO DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES**<br>[Served concurrently with Declaration of Nathan O'Malley; Declaration of Peter Diedrich; Declaration of Denka Toncheva; and [Proposed[] Order]<br><br>Date of Motion:  January 16, 2020<br>Time:          1:30 p.m.<br>Courtroom:  Hon. Kandis A. Westmore |

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

    **PLEASE TAKE NOTICE** that pursuant to Federal Rule of Civil Procedure 69(a) and California Code of Civil Procedure §187, Judgment Creditor TMCO, Ltd. ("TMCO") moves this Court for an Order allowing TMCO to amend the judgment against debtor Green Light Energy Solutions R&D Corp. ("GLES Corp.") to add additional judgment debtors under the alter ego doctrine on January 16, 2020, or as soon thereafter as the matter may be heard before the Honorable Kandis A. Westmore in the above-entitled Court located at 1301 Clay Street, Oakland, CA 94612. The grounds of the motion, as more fully described in the brief, are as follows:

    1.    An arbitration award was entered by this Court on November 11, 2017 in the

1    amount of EUR €1,797,968.23 and USC $107,000.00 against GLES, Corp.

2         2.      GLES Corp. has not made payment on the judgment, and now claims to not have

3    the assets or funds needed to make any payment on its judgment.

4         3.      TMCO conducted debtor examinations of GLES Corp.'s president, Alex Feerer

5    ("Mr. Feerer") on February 15, 2018, and November 29, 2018. TMCO propounded further

6    discovery to GLES which, as explained below, GLES failed to answer.  Mr. Feerer was the GLES

7    Corp.'s representative throughout arbitration. During the debtor examinations, it became clear that

8    GLES Corp. was never adequately funded to cover any of the financial obligations it incurred

9    when it entered into its contract with TMCO. It became further apparent that GLES Corp. is part

10   of a single enterprise owned and operated by Mr. Feerer with his other corporation, Green Light

11   Energy Solutions, LLC ("GLES, LLC").

12        4.      TMCO asks that this Court amend its judgment to add Mr. Feerer and GLES, LLC

13   to the judgment as debtors under the alter ego doctrine. Failure to do so will allow Mr. Feerer and

14   GLES, LLC to shield their assets through the use of the shell corporation, GLES Corp.

**PRAYER**

16        For the foregoing reasons, TMCO respectfully requests that the Court amend its judgment

17   to add Mr. Feerer and GLES, LLC as judgments debtors.

19   DATED: November 6, 2019          MUSICK, PEELER & GARRETT LLP


21                                    By:  /s/
22                                         Nathan D. O'Malley
                                           Peter J. Diedrich
23                                         Attorneys for Judgment Creditor
                                           TMCO LTD

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

1177667.1                          2                          Case No. 4:17-CV-00997-KAW
JUDGMENT CREDITOR TMCO, LTD.'S MOTION FOR LEAVE TO AMEND JUDGMENT TO ADD ALTER
EGO DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES

1

**TABLE OF CONTENTS**

Page

2

3 I. FACTUAL AND PROCEDURAL BACKGROUND....................................................................1

4 II. THE COURT HAS BROAD AUTHORITY TO AMEND A JUDGMENT ................................4

5 III. GLES, CORP. AND GLES, LLC ARE ALTER EGOS OF MR. FEERER................................5

6       A.      GLES, Corp. Was Unable to Produce Evidence of Corporate Formalities................6

7       B.      GLES, Corp. Had No Funds to Pay for its Financial Obligations ...........................13

8       C.      There Was No True Separation Between Mr. Feerer and GLES, Corp. ..................15

9       D.      Mr. Feerer Operated GLES, Corp., and GLES, LLC As A Single Enterprise.........18

10 IV. FAILURE TO DISREGARD THE CORPORATE IDENTITY WILL RESULT IN
       INJUSTICE .........................................................................................................................20

11

V. MR. FEERER AND GLES, LLC SHOULD BE  ADDED TO THE JUDGMENT...................22

12

VI. THE COURT SHOULD SANCTION GLES, CORP. AND MR. FEERER AND
13     AWARD TMCO, LTD. COSTS FOR MOTION ..................................................................23

14 VII. CONCLUSION......................................................................................................................23

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

1177667.1                                                          i                              Case No. 4:17-CV-00997-KAW

JUDGMENT CREDITOR TMCO, LTD.'S MOTION FOR LEAVE TO AMEND JUDGMENT TO ADD ALTER
EGO DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*21st Century Financial Services, LLC v. Manchester Financial Bank*
    255 F. Supp. 3d 1012, 1022 (S.D. Cal. 2017) ..................................................................7

*Bank of Montreal v. SK Foods, LLC*
    476 B.R. 588 (Bankr. N.D. Cal., 2012) ........................................................................5

*Chambers v. NASCO, Inc.* 501 U.S. 32 (U.S. 1991) ......................................................26

*First W. Bank & Tr. Co. v. Bookasta,*
    267 Cal. App. 2d 910 (Cal. Ct. App., 1980).................................................................5

*Greenspan v. LADT, LLC,*
    191 Cal. App. 4th 486 (Cal. Ct. App., 2010) ...............................................................21

*In re Levander,*
    180 F.3d 1114 (9th Cir.1999)........................................................................................5

*McLaughlin v. L. Bloom Sons Co.,*
    206 Cal. App. 2d 848 (Cal. Ct. App. 1962)..................................................................6

*Misik v. D'Arco*
    197 Cal. App. 4th 1065, 1073 (Cal. Ct. App. 2011) .....................................................7

*Stewart v. Screen Gems-EMI Music, Inc.*
    81 F. Supp. 3d 938, 954 (N.D. Cal. 2015) ..................................................................19

*Toho-Towa Co.,* 217 Cal. App. 4th 1096 (Cal. Ct. App. 2013) .........................................21

*Tomaselli v. Transamerica Ins. Co.*
    25 Cal. App. 4th 1269 (Cal. Ct. App. 1994) ...............................................................23

*Triplett v. Farmers Ins. Exchange*
    24 Cal.App.4th 1415 (Cal. Ct. App., 1994) ..................................................................5

*Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc.*
    99 Cal. App. 4th 228 (Cal. Ct. App. 2002) ...................................................................7

**Statutes**

California Civil Procedure Code § 187 ................................................................................5

California Code of Civil Procedure
    §187..................................................................................................................................5

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

JUDGMENT CREDITOR TMCO, LTD.'S MOTION FOR LEAVE TO AMEND JUDGMENT TO ADD ALTER
EGO DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES

California Code of Civil Procedure
   §187 ............................................................................................................................27

California Corporations Code
   §1500 ...........................................................................................................................9

**Other Authorities**

Federal *Rule of Civil Procedure* 69 ...........................................................................................27

Federal Rule of Civil Procedure 69(a) .........................................................................................5

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

1177667.1                                   iii                        Case No. 4:17-CV-00997-KAW

JUDGMENT CREDITOR TMCO, LTD.'S MOTION FOR LEAVE TO AMEND JUDGMENT TO ADD ALTER
EGO DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES

## MEMORANDUM OF POINTS & AUTHORITIES

### I.

## FACTUAL AND PROCEDURAL BACKGROUND

On or about February 6, 2012, TMCO and GLES Corp. , through its president, Mr. Feerer, negotiated and executed a written contract, under which TMCO was to produce, and GLES Corp. was to purchase, TMCO equipment parts. The equipment parts were bespoke to GLES, Corp.'s order. On or about November 22, 2012, the parties executed an amendment to the contract, which allowed GLES Corp. additional time to pay for the equipment parts.  A dispute ultimately arose between the parties concerning GLES Corp.'s failure to take delivery of and pay for the TMCO equipment parts, pursuant to the contract.

On November 28, 2014, TMCO filed its Request for Arbitration with the ICC Secretariat, which was transmitted to Mr. Johan Lambers as the sole arbitrator of the proceedings.  The arbitration followed the procedure prescribed by the ICC Rules of Arbitration (Request for Arbitration — Answer to Request for Arbitration — Signature of the Terms of Reference — First Submissions by both Parties — All-inclusive Submissions by both Parties — Hearing and Closing of the Proceedings — Submissions on Costs by both Parties — Final Award).  GLES, Corp., through Mr. Feerer, fully participated in the arbitration and had the opportunity to present its case. On or about January 20, 2016, the sole arbitrator issued the Final Award finding in favor of TMCO and against  GLES Corp. [Dckt. Entry 1-4, Ex. 6].

On February 27, 2017, TMCO filed its Petition for Order to Confirm Arbitration Award and Enter Judgment in Conformity with the Arbitration Award against GLES Corp.  [Dckt. Entry 1]. On November 14, 2017 the Court entered its judgment enforcing the arbitration award to TMCO against GLES Corp. for the amounts included in the arbitration in the amount of EUR €1,797,968.23 and USD $107,000.00, plus interest on certain items in the award, due from the date of the award until paid in full. [Dckt. Entry 34].

Following the Court's November 14, 2017 order, TMCO sought to enforce its judgment against GLES Corp.   In December 2017, TMCO subpoenaed corporate documents and records from GLES, Corp. but it failed to comply with the subpoena. (Decl. of Peter Diedrich ("Diedrich

JUDGMENT CREDITOR TMCO, LTD.'S MOTION FOR LEAVE TO AMEND JUDGMENT TO ADD ALTER
EGO DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES

Decl.") ¶ 5). The Court then ordered the examination of Mr. Feerer, as well as the production of documents. [Dckt. Entry 37].

Mr. Feerer sat for his court-ordered examination on February 15, 2018. At the examination, his counsel provided a disc which included certain documents, but Mr. Feerer could not produce most items included in the Court's order, stating they were deleted by the company's attorney or otherwise unavailable. (Diedrich Decl. ¶7). Mr. Feerer proceeded to offer vague testimony regarding GLES Corp.'s formation, shareholders, and assets. Because GLES, Corp. produced documents the same day as the first examination, the parties agreed that Mr. Feerer would sit for a second examination. (Diedrich Decl. ¶ 8).

Mr. Feerer's continued examination under oath took place on November 29, 2018. (Diedrich Decl. ¶ 9). TMCO's counsel inquired about the few documents which had been produced at the prior exam, including a stock ledger, accounting lists for 2012 through 2014, and bank statements from 2017.  (Diedrich Decl. ¶ 10). However, Mr. Feerer's testimony at the second examination contradicted the content of the documents, and called into question their authenticity, as he testified that the people who prepared or had knowledge of the documents were dead, or otherwise unavailable. He also offered testimony which was inconsistent with his prior examination. (Diedrich Decl. ¶ 13).

TMCO then served written interrogatories seeking further information concerning GLES, Corp.'s formation, shareholders, financial records, and corporate status. (Declaration of Nathan O'Malley ("O'Malley Decl."), ¶5). TMCO also served document requests which sought very basic documents commonly required for the formation of a corporation, such as documents reflecting the corporate structure, documents that identify shareholders, documents that identify loans made to or from shareholders, documents identifying employees and officers of the corporation, meeting minutes, tax returns, and documents which identify the corporation's inventory. (O'Malley Decl., ¶ 7). GLES, Corp.'s responses to both the interrogatories and document requests, verified by Mr. Feerer, were evasive and incomplete. (O'Malley Decl. ¶¶6 , 8-9; See also Exs. "A" and "B" to O'Malley Decl.).

TMCO sent GLES, Corp. a meet and confer letter on June 11, 2019 regarding the

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

1177667.1

2

Case No. 4:17-CV-00997-KAW

JUDGMENT CREDITOR TMCO, LTD.'S MOTION FOR LEAVE TO AMEND JUDGMENT TO ADD ALTER
EGO DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES

insufficient responses. (Ex. "C" to O'Malley Decl.). On June 27, 2019, the parties participated in a conference call to discuss GLES, Corp.'s responses and document production. (O'Malley Decl., ¶ 10). Following this call, TMCO's counsel wrote a letter on June 28, 2019 memorializing the parties' conversation, during which counsel for GLES, Corp. had confirmed supplemental responses would be forthcoming. (O'Malley Decl., ¶ 11). As stated in that letter, GLES, Corp. had agreed to provide further written responses by July 5, 2019, regarding the following topics:

> (1) Whether GLES paid actual money to Alex Feerer as compensation for his work as an employee, officer, or member of the board of directors of GLES, and if so, the amount paid through 2018;

> (2) Whether the shareholders transferred money to GLES in exchange for shares, and if so, when and how much; if not, identify the form of payment each shareholder provided to GLES in exchange for the shares received;

> (3) Identify the amount of money the Feerer Family Trust loaned to GLES, Corp, the terms of the loan, and any transfer of money to GLES controlled bank accounts as part of the transaction;

> (4) Identify any other loans provided to GLES, and the terms of each loan;

> (5) Whether GLES, Corp. leased or owned property within Russia under its own name, leased or owned property for residential use of Mr. Feerer in Russia, and whether GLES, Corp. conducted business activities in Russia through a related Russian subsidiary. (Ex. "D" to O'Malley Decl.).

Counsel for GLES, Corp. requested additional time to supplement these responses, stating more time was needed for "her client Alex Feerer" to "go an extra mile and to find the statements that confirm the funding of the company and loans from the family trust." (Ex. "E" to O'Malley Decl.). As made clear by this communication, Mr. Feerer was not only the individual with access and control to the corporation's documents, but also considered the true client in this matter.

In the interim, GLES, Corp. produced some documents in response to TMCO's document requests. (O'Malley Decl. ¶ 13). In a letter dated July 5, 2019, TMCO's counsel confirmed the content of the document production, and identified the documents which had not been produced. (O'Malley Decl. ¶ 14). As noted in TMCO's correspondence, GLES, Corp. did not provide federal or state tax returns pertaining to a fiscal year after 2016. GLES only produced one corporate record, a board resolution from July 15, 2015. GLES did not produce a corporate

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

1177667.1                                      3                        Case No. 4:17-CV-00997-KAW

JUDGMENT CREDITOR TMCO, LTD.'S MOTION FOR LEAVE TO AMEND JUDGMENT TO ADD ALTER
EGO DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES

1  balance sheet or other financial record pertaining to a time after the fiscal year 2016, and all

2  records which were produced were unaudited and unsigned. GLES, Corp. also produced a

3  financial statement purported to be from December 31, 2016, that was created on February 8, 2018

4  at 3:14 p.m. (Ex. "F" to O'Malley Decl.).

5        On July 8, 2019, counsel for GLES, Corp. responded and confirmed once again that

6  written responses and documents identified in TMCO's meet and confer letters would be provided

7  no later than July 20, 2019. (Ex. "G" to O'Malley Decl.). July 20, 2019 passed and still no

8  supplemental documents or responses had been served by GLES, Corp. (O'Malley Decl., ¶ 18).

9  On July 22, 2019, counsel for GLES, Corp. wrote to TMCO's counsel in an email stating: "I am

10 writing to let you know that GLES Corporation did not find additional documents. Therefore, we

11 would not be able to supplement our responses at this time."  (Ex. "H" to O'Malley Decl.). As of

12 the date of this Motion, GLES, Corp. has failed to provide supplemental responses or documents.

13 (O'Malley Decl., ¶ 38).

14                                    **II.**

15              **<u>THE COURT HAS BROAD AUTHORITY TO AMEND A JUDGMENT</u>**

16        This Court may amend the judgment to add alter ego defendants pursuant to Cal. Code of

17 Civ. Proc. §187.  The Ninth Circuit has held that Federal Rule of Civil Procedure 69(a) empowers

18 federal courts to rely on state law to add judgment-debtors to money judgments. *In re Levander*,

19 180 F.3d 1114, 1120–21 (9th Cir.1999). "California Civil Procedure Code § 187 allows the

20 amendment of a judgment "to add additional judgment debtors on the grounds that a person or

21 entity is the alter ego of the original judgment debtor." " *Bank of Montreal v. SK Foods, LLC* 476

22 B.R. 588, 597 (Bankr. N.D. Cal., 2012) (citations omitted).

23        Courts may add judgment debtors under the alter ego theory so long as the new party is an

24 alter ego of the judgment debtor, and the new party had control of the underlying litigation. "The

25 ability under section 187 to amend a judgment to add a defendant, thereby imposing liability on

26 the new defendant without trial, requires *both* (1) that the new party be the alter ego of the old

27 party *and* (2) that the new party had controlled the litigation, thereby having had the opportunity to

28 litigate, in order to satisfy due process concerns." *Triplett v. Farmers Ins. Exchange* 24

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

1177667.1                                      4                        Case No. 4:17-CV-00997-KAW
JUDGMENT CREDITOR TMCO, LTD.'S MOTION FOR LEAVE TO AMEND JUDGMENT TO ADD ALTER
EGO DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES

1 | Cal.App.4th 1415, 1421 (Cal. Ct. App., 1994) .

2 |       Courts are afforded liberality to amend the judgment and apply the alter ego doctrine to

3 | ensure justice. "[T]he courts have followed a liberal policy of applying the *alter ego* doctrine

4 | where the equities and justice of the situation appear to call for it rather than restricting it to the

5 | technical niceties depending upon pleading and procedure. It is essential principally that a showing

6 | be made that both requirements, i.e., unity of interest and ownership, and the promotion of

7 | injustice by the fiction of corporate separate existence, exist in a given situation." *First W. Bank &*

8 | *Tr. Co. v. Bookasta*, 267 Cal. App. 2d 910, 915 (Cal. Ct. App., 1980) (citations omitted) (italics in

9 | original).

10 |       The evidence, or lack thereof, which has come to light in the debtor examination process

11 | indicates that Mr. Feerer operated GLES, Corp. as a single enterprise together with his other

12 | company, GLES, LLC as a conduit for his personal business. There was such unity of interest and

13 | ownership, as well as  informality and disregard for corporate requirements, that separateness

14 | between the corporation and individual no longer exists. GLES, Corp. is not currently funded to

15 | pay the judgment against it, nor was it ever adequately funded even at the time GLES, Corp.

16 | entered into the contract with TMCO. As of Mr. Feerer's second debtor examination, he is

17 | threatening to file bankruptcy for GLES, Corp. Accordingly, it is necessary that this Court amend

18 | the judgment to add the corporation's alter egos, Mr. Feerer and GLES, LLC, as judgment debtors.

19 | If this is not done, inequity will result as GLES, Corp. will shield Mr. Feerer and GLES, LLC

20 | from liabilities they knowingly incurred at TMCO's expense and loss.

21 | **III.**

22 | **GLES, CORP. AND GLES, LLC ARE ALTER EGOS OF MR. FEERER**

23 |       There is no specific factual structure that must be met for application of the alter ego

24 | doctrine. Rather, the court considers several factors to determine if the corporate identity should be

25 | overlooked to name a shareholder.

26 |       "The alter ego doctrine is founded in equity and its application is not made to depend upon

27 | prior decisions involving factual situations which appear to be similar…'The conditions under

28 | which the corporate entity may be disregarded, or the corporation be regarded as the alter ego of

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

1177667.1               5               Case No. 4:17-CV-00997-KAW

JUDGMENT CREDITOR TMCO, LTD.'S MOTION FOR LEAVE TO AMEND JUDGMENT TO ADD ALTER
EGO DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES

the stockholders, necessarily vary according to the circumstances in each case inasmuch as the doctrine is essentially an equitable one and for that reason is particularly within the province of the trial court. '" *McLaughlin v. L. Bloom Sons Co.,* 206 Cal. App. 2d 848, 853 (Cal. Ct. App. 1962) (citations omitted).

In determining whether to apply this equitable doctrine, Courts look to several factors to determine whether to pierce the corporate entity and regard the corporation as an alter ego of the shareholder. Such factors include:

> "[O]ne individual's ownership of all stock in a corporation; use of the same office
> or business location; commingling of funds and other assets of the individual and
> the corporation; an individual holding out that he is personally liable for debts of
> the corporation; identical directors and officers; failure to maintain minutes or
> adequate corporate records; disregard of corporate formalities; absence of corporate
> assets and inadequate capitalization; and the use of a corporation as a mere shell,
> instrumentality or conduit for the business of an individual.'" *Misik v. D'Arco* 197
> Cal. App. 4th 1065, 1073 (Cal. Ct. App. 2011) (internal citations omitted).

The court in *21st Century Financial Services, LLC v. Manchester Financial Bank* 255 F. Supp. 3d 1012, 1022 (S.D. Cal. 2017) considered similar factors for application of the alter ego doctrine under the single enterprise theory. ["Factors to be considered include inadequate capitalization, commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, use of one as a mere conduit for the affairs of the other, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers." *Id.* at 1022].

Here, the evidence supports a finding that GLES, Corp. and GLES, LLC are the alter egos of Mr. Feerer. Accordingly, Mr. Feerer and GLES, LLC should be added as judgment debtors to prevent injustice.

### A.   GLES, Corp. Was Unable to Produce Evidence of Corporate Formalities

Among the many factors considered by a court in determining whether alter ego applies are

MUSICK, PEELER & GARRETT LLP
ATTORNEYS AT LAW

1177667.1

6

Case No. 4:17-CV-00997-KAW

JUDGMENT CREDITOR TMCO, LTD.'S MOTION FOR LEAVE TO AMEND JUDGMENT TO ADD ALTER EGO DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES

1  the "disregard of corporate formalities, lack of segregation of corporate records, and identical

2  directors and officers." *Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc.* 99 Cal. App. 4th 228, 245

3  (Cal. Ct. App. 2002).

4      The results of TMCO's  investigation reveals that GLES Corp. did not observe even basic

5  corporate formalities and recordkeeping.  As an example, despite numerous efforts to obtain

6  standard documentation, GLES Corp. was unable to produce  records of shareholder meetings,

7  regular board meeting minutes or resolutions, evidence of the election of directors or the

8  appointment of officers for any year of operation, with the exception of just one Director's

9  Resolution from the year 2016.  The few so-called "records" which have been produced

10  constituted mainly unsigned and unaudited financial documents which appear to not have been

11  prepared following any known accounting principles and which by Mr. Feerer's own testimony,

12  have been shown to contain erroneous statements.

13      The order for Mr. Feerer's debtor examination included a demand for production of certain

14  basic documents concerning the corporation's existence, including but not limited to documents

15  identifying the shareholders, employees, corporate records, financial institution records, financial

16  statements and reports, documents reflecting loans and lenders, and documents reflecting or

17  referring to any goods, inventories, or merchandise owned by GLES Corp. [Dckt. Entry 37].

18      Mr. Feerer testified that he could not produce corporate books and records including

19  minutes of meetings, board director meetings, and actions taken by shareholders because the

20  corporation's attorney, Mr. Nelson[1], the individual purportedly in charge of keeping GLES,

21  Corp.'s corporate records, "accidentally deleted the file and doesn't have any records." (Ex. "A" to

22  Diedrich Decl., p. 10:17-11:23).  If Mr. Feerer's testimony is to be believed, that means GLES,

23  Corp.'s counsel, Mr. Nelson - who was fully aware of the arbitration award and the large monetary

24  judgment entered against his client - deleted records which would have provided details about the

25  operations, assets and business of the corporation.  This destruction of evidence is suspicious, at

26

27  [1] Mr. Nelson was GLES, Corp.'s attorney throughout the underlying arbitration. [Dkt. Entry 1-4].
He resigned as counsel for the corporation in March of 2017. (Ex. "A" to Diedrich Decl. at 20:10-

28  24; See also Ex. "P" to O'Malley Decl.).

1  best, and more likely nefarious record keeping.

2  Mr. Feerer's explanation for the lack of records notwithstanding, the evidence is that

3  GLES Corp. is unable to substantiate that it operated as a corporation in accordance with

4  California Corporations Code, including section 1500, which provides that, "[e]ach corporation

5  shall keep adequate and correct books and records of account and shall keep minutes of the

6  proceedings of its shareholders, board and committees of the board and shall keep at its principle

7  executive office, or at the office of its transfer agent or registrar, a record of its shareholders,

8  giving the names and addresses of all shareholders and the number and class of shares held by

9  each. Those minutes and other books and records shall be kept either in written form or in another

10 form capable of being converted into clearly legible paper form…" (Cal. Corp. Code §1500).

11 GLES, Corp. apparently has not complied with this statute as Mr. Feerer was unable to find

12 meeting minutes or shareholder records. Review of the documents which were produced however

13 show that GLES, Corp. likely never had such records to begin with as Mr. Feerer never treated

14 GLES, Corp. as a true corporation.

15 There is no evidence, for example, that GLES, Corp. ever held an annual shareholder

16 meeting, duly elected any directors or via a properly constituted board, actually appointed officers

17 to act for the company. GLES, Corp. produced only one document of a single board resolution

18 from 2015. (O'Malley Decl., ¶ 21). GLES Corp. was unable to produce any corporate resolution

19 appointing Alex Feerer, who, as discussed below, negotiated the agreement with TMCO that was

20 the underlying basis for the Arbitration Award, as an officer of the corporation. GLES Corp., also

21 has not produced records  showing that Alex Feerer was duly elected as a board member, or was

22 authorized to act as the company's representative in the Arbitration.

23 TMCO's subpoena, document request and interrogatories sought financial documents as

24 well. Mr. Feerer testified that he could not produce accurate financial statements nor contact the

25 (former) CFO of GLES who was allegedly charged with preparing such statements. (Ex. "A" to

26 Diedrich Decl. at 16:2-17:16).  At his second examination, when questions were put to Mr. Feerer

27 regarding the few financial records which had been produced, he deferred on multiple occasions to

28 the company's bookkeeper for answers concerning GLES Corp.'s profit and loss statement. (Ex.

1  "B" to Diedrich Decl., at 63:3-7).  But, when asked who the bookkeeper was who prepared the

2  profit and loss statement, Mr. Feerer simply replied, "no one. Drug, alcohol, and that's it. He's

3  gone." (*Id*. at 71:21-72:14).   GLES's counsel also stated they did not know if the documents

4  produced included  a proper corporate balance sheet, further undermining any ability to

5  authenticate the document. (*Id*. at 80:13-20).

6          On multiple occasions during his examination, Mr. Feerer confirmed that the financial

7  statements generated by GLES and produced during discovery were of doubtful accuracy. For

8  example, GLES, Corp.'s profit and loss documents list traditional liabilities as assets, showing

9  loans from GLES, LLC as assets of GLES. (*Id*. at 78:1-79:9; 81:4-83:16). Mr. Feerer, himself

10  would also state that records such as GLES, Corp.'s stock ledger document was in fact, inaccurate.

11  (*Id*. at 60:11-24; 61:15-62:19 ).

12          Other examples of blatant falsehoods contained in the financial records produced include

13  instances where financial statements purported to show that equipment ordered by GLES, Corp.,

14  but not paid for, constituted assets owned by the company. As an example, GLES Corp. produced

15  "records" in discovery listing as assets of the firm equipment ordered by GLES, Corp. and

16  produced and held by TMCO, which GLES, Corp. neither took possession of, nor paid for.

17  (O'Malley Decl. ¶28-29; see also Ex. "N" to O'Malley Decl.). As per the Arbitration Award

18  approved by this court, it is a matter of judicial record that GLES, Corp. had failed to make

19  payment for these assets, did not take possession of them, and thus had no basis for listing them as

20  an asset of the company.

21           Furthermore, TMCO made several attempts to ascertain the shareholders of GLES, Corp.

22  However, the few documents that have been provided to that end  contained contradictory

23  information  as to whether there were in fact multiple shareholders.  GLES, Corp., which has

24  existed since 2010 (Decl. of O'Malley ¶34), produced an alleged shareholder ledger purporting to

25  show multiple holders of its common stock. (Exhibit 2 of Ex.  "B" to Diedrich Decl.). When

26  interrogatories were propounded  seeking further information as whether the apparent shareholders

27  had paid consideration for their reported ownership interest and had taken possession of the

28

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

1177667.1                                              9                        Case No. 4:17-CV-00997-KAW
JUDGMENT CREDITOR TMCO, LTD.'S MOTION FOR LEAVE TO AMEND JUDGMENT TO ADD ALTER
EGO DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES

1    shares, GLES, Corp. stated it was unable to supply such information.[2] (Ex. "A" to Decl. of

2    O'Malley). The reason GLES, Corp. could not authenticate its share structure (i.e. by producing

3    true share ledgers or shareholder meeting minutes)  was revealed when GLES, Corp. later

4    produced federal tax records, demonstrating that it had represented to the Internal Revenue Service

5    that it did not have multiple shareholders.  According to its own statements to the IRS, GLES,

6    Corp. was wholly owned by GLES, LLC, a company controlled by Feerer,  reporting that its

7    shares were held 100% by GLES, LLC. ( O'Malley Decl. ¶31).  Comparing the statements

8    provided to the IRS versus what was contained in the self-generated shareholder ledger reveals

9    that the "records" showing that the company had several shareholders were erroneous and that

10   GLES, Corp. was in fact controlled completely by Mr. Feerer.

11           GLES, Corp. also produced numerous  unsigned tax returns and balance sheets,  but, as

12   was evident from their face, these documents  inaccurately represented GLES, Corp.'s inventory

13   and assets. TMCO specifically requested any and all documents reflecting any inventory owned by

14   GLES, Corp. GLES, Corp. regularly listed millions of dollars of assets in inventory in its tax

15   returns.  GLES, Corp. also produced a single document that appears to be An account list of its

16   assets from the years 2010, 2011, 2012, 2013, and 2014. (Ex. "N" to O'Malley Decl.). This

17   document includes a category titled "Inventory" with a subcategory titled "Production in Process."

18   The document also included itemization of "Liabilities & Equity" with a subcategory of "Other

19   Current Liabilities" including amounts payable to TMCO. Review of this asset sheet  shows that

20   GLES, Corp. regularly listed equipment that it did not pay for as assets and inventory owned by

21   the company. For instance, it appears that GLES, Corp. listed the equipment it ordered from

22   TMCO under "Production in Progress" as an asset of $2,088,260.56 for the years 2012 through

23

24   [2] Through July, 2019, GLES, Corp.'s current counsel Ms. Kamyshanskaya who is also the agent
     for process for Mr. Feerer's other company, GLES, LLC, represented that Mr. Feerer would
25   provide documents with details concerning the shareholders and corporation's finances and assets
     from 2012 through the present were forthcoming. However, most recently, GLES, Corp., admitted
26   that it is unable to comply and produce the documents which had been expressly promised. As
     GLES, Corp. offered no explanation for its inability to produce the requested documents, it
27   appears the documents reflecting shareholder transactions, complete tax records, audited and
     signed financial documents simply do not exist.

28

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

1177667.1                                    10                    Case No. 4:17-CV-00997-KAW
JUDGMENT CREDITOR TMCO, LTD.'S MOTION FOR LEAVE TO AMEND JUDGMENT TO ADD ALTER
EGO DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES

1   2014. For those same years, GLES, Corp. recorded a liability of $811,986.06 as "Payable – TMCo

2   (Serial prod.)". Therefore, despite the fact GLES, Corp. never took possession of and failed to

3   render payment for the equipment from TMCO, it recorded the equipment as an inventory asset in

4   its balance sheets for the years 2012 through 2014. (O'Malley Decl. ¶ 29). It can only be assumed

5   that, like the 2012 returns, these millions of dollars in inventory listed on the balance sheets, like

6   the inventory reported in the federal tax returns [3] for the proceeding years are also inaccurate

7   representations of GLES, Corp.'s assets.

8         GLES, Corp.'s own corrections to its internal documents further undermine the reliability

9   of the records . The balance sheet from 2015 includes a loan to GLES, Corp. for $59,923,029.98

10  under its fixed assets. As stated above, GLES, Corp. incorrectly listed this sizable loan – a liability

11  – under its assets for the year. This same item is included in the 2016 balance sheet. (Ex. "O" to

12  O'Malley Decl.). However, there is no detail provided for this significant loan, i.e. from whom,

13  what form of capital, terms of the loan, or when the loan was made. Then, GLES, Corp. filed an

14  amendment to its 2015 and 2016 returns correcting the balance sheet to remove the almost 60

15  million dollar loan. (O'Malley Decl. ¶33). That a loan of this size was erroneously documented as

16  an asset on GLES, Corp.'s balance sheets for two years, however, highlights the company's

17  unreliable recordkeeping practices.

18        In summary, GLES, Corp. was unable to provide documents showing that the most basic

19  corporate functions and formalities were observed. As for the documents which were produced,

20  the records were haphazard, and included inaccurate or unsubstantiated information. The

21  documents produced require explanation to understand GLES, Corp.'s financial structure.

22  TMCO's efforts to obtain clear explanations of the documents however were unavailing as Mr.

23  Feerer testified, as noted above, that the individuals responsible for preparing the financial

24  documents were missing, drugged, or potentially even dead. (Ex. "A" to Diedrich Decl. at 17:9-

25  25; Ex. "B" to Diedrich Decl. at 63:3-7; 71:21-72:14).

26

27  [3] The balance sheets provided to the IRS for 2016 itemize the corporation's total inventory at
    $5,117,226; the 2015 return documents lists $5,177,226; the 2013 documents list over 5 million

28  dollars. (Ex. "K" to O'Malley Declaration)

JUDGMENT CREDITOR TMCO, LTD.'S MOTION FOR LEAVE TO AMEND JUDGMENT TO ADD ALTER
EGO DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES

1    Throughout his examination, Mr. Feerer attempted to distance himself from any

2    knowledge of GLES, Corp.'s records and blamed the lack of documentation on other individuals.

3    However, Mr. Feerer was apparently the corporation's contact for preparing and submitting

4    information to the IRS regarding the corporation's assets from 2012 through 2016, and was

5    personally instructed to preserve the corporation's financial records.

6    The production included several letters from GLES, Corp.'s CPA, Michael K. White,

7    addressed to Mr. Feerer personally, enclosing the tax documents prepared for returns from 2012

8    through 2016. (O'Malley Decl. ¶23). On April 30, 2015, Mr. White sent three letters to Mr. Feerer

9    with the corporation's 2012, 2013, and 2014 tax records. (Ex. "J" to O'Malley Decl.). On

10   December 27, 2017,  similar letters were sent enclosing the amended tax records for 2015 and

11   2016. (Ex. "K" to O'Malley Decl.). Each of these letters advised Mr. Feerer to familiarize himself

12   with the accompanying documents to ensure there are no omissions or misstatements, and

13   recommended that he retain all pertinent records for seven years. (Exs. "J" and "K" to O'Malley

14   Decl.). Per the letters, the returns and amended returns were prepared "from information provided

15   by [Mr. Feerer] without verification or audit." (*Ibid.*). Mr. Feerer was in charge of signing off and

16   submitting the tax records to the IRS. The letters also instructed Mr. Feerer to preserve the

17   supporting documentation for audit. (*Ibid* ).

18   As shown by Mr. Feerer's testimony and the lack of documents produced, Mr. Feerer did

19   not heed such instructions and failed both to familiarize himself with the tax returns, and to

20   preserve the supporting documentation. He cannot feign ignorance now to absolve himself from

21   liability, just as he cannot utilize this corporation, which was never funded and never completed a

22   business transaction, as a shell so that he may obtain corporate tax write-offs for his own personal

23   benefit.

24   Altogether, GLES, Corp.'s record-keeping habits do not reflect that of a functional and

25   formal corporation. GLES, Corp. failed to observe any corporate formalities, and its officers, who

26   were identical to those operating Mr. Feerer's other company, GLES, LLC, failed to segregate and

27   preserve its financial and corporate records.

28   //

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

1177667.1                                      12                          Case No. 4:17-CV-00997-KAW
JUDGMENT CREDITOR TMCO, LTD.'S MOTION FOR LEAVE TO AMEND JUDGMENT TO ADD ALTER
EGO DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES

**B.**    <u>GLES, Corp. Had No Funds to Pay for its Financial Obligations</u>

Mr. Feerer is threatening to place the corporation in bankruptcy, claiming it cannot afford to pay the judgment owed to TMCO. (Ex. "B" to Diedrich Decl., p. 58:8-59:10). However, it is apparent that GLES, Corp. has never had any funds to pay its financial obligations. Instead, Mr. Feerer utilized GLES, Corp. as a conduit for his personal business transactions, and to claim certain tax write-offs and other benefits.

Pursuant to the Contract, TMCO agreed to produce equipment in accordance with the specs and drawings prepared by GLES, Corp. For these bespoke goods, GLES, Corp. agreed to a total contract price of 4 854 732.50 Euro. (Declaration of Denka Toncheva ("Toncheva Decl."), ¶5). As determined in the underlying Arbitration, GLES, Corp. breached the contract and failed to pay for the equipment per the terms of the contract. [Dckt. Entry 1-4, Ex. 6].

At the time of breach up through the arbitration, Mr. Feerer represented that the reason GLES, Corp. had not paid was due to compliance issues with the products. At arbitration, GLES, Corp. renewed its assertion that the products did not conform with the specifications of the contract. [See Dckt 1-4, p. 103]. The arbitrator dismissed this defense as a matter of law, and found TMCO's products were compliant with the contract. [See Dckt 1-4, p.133-135]. Only now in enforcement proceedings has it come to light that the true reason GLES, Corp. did not pay for this equipment was because it never had the money to pay for the goods.

Mr. Feerer testified there was no money in the Corporation's bank account as of 2012. GLES Corp. instead intended to pay for the contract with TMCO through money paid to it from another purchaser, Moscow Region Government. However, this third party purchaser went bankrupt. (Ex. "B" to Diedrich Decl. at 105:19-107:8). Overlooking the incredulous claim that the purchaser – a Russian government entity- went bankrupt, this broker-type deal was never communicated to TMCO.

The contract was for goods negotiated solely between TMCO and GLES, Corp., represented by Mr. Feerer; TMCO was never advised that GLES, Corp. might be unable to make payment should a third party purchaser go bankrupt. (Toncheva Decl. ¶ 23). Rather, the existence of this purported broker-type deal was disclosed for the first time during Mr. Feerer's second

1   debtor examination in November 2018. (*Id.* at ¶ 24).However, as discussed further below, the risk

2   and resultant liability of Mr. Feerer's speculative venture did not absolve GLES, Corp. from

3   ensuring it had the capital to fund its financial obligations under the contract. (*Id.* at ¶25).

4       In addition, the corporation was never adequately capitalized to operate as a bona fide

5   business. At no point in its entire existence did the corporation ever make a sale, or get paid for

6   selling equipment.  (Ex. "A" to Diedrich Decl. at 31:20-32:13). The profit and loss documents

7   produced by GLES, Corp. further indicate it was always operating at a loss of several hundred

8   thousand dollars, which grew in debt each year. This is corroborated by the income tax returns

9   provided, which reported a net loss of hundreds of thousands of dollars every year. (O'Malley

10  Decl., ¶ 30).

11      Upon examination, and in interrogatories, the only "income" or revenue Mr. Feerer

12  identified was in the form of personal loans he allegedly made to GLES, Corp. (Diedrich Decl.

13  ¶14). But GLES, Corp. could not provide any documentation which shows Mr. Feerer's funding of

14  the corporation. Therefore, there is no traceable record of actual funding or capitalization of the

15  corporation at any time since its creation.

16      Furthermore, no working capital could be identified through third party sources such as

17  shareholder transactions. In interrogatories, GLES, Corp. identified four shareholders of the

18  corporation: GLES, LLC with 51 million shares in exchange for an unidentified non-cash

19  consideration in 2010; OOO'Inginiringovaa Company with 30,650 shares purchased for $122,600

20  in 2012; Alex Rovt with 4 million shares purchased for $2,000,000 in 2011; and, Vladimir

21  Cadovichs with 50,000 shares purchased for $50,000 in 2013. (Ex. "A" to O'Malley Decl.).

22  However, GLES, Corp. was unable to substantiate any of these purported shareholder transactions

23  with a single document.

24      Throughout the parties' meet and confer efforts in June and July 2019, counsel for GLES,

25  Corp. made several representations that it would provide supplemental responses with details

26  concerning its shareholders once Mr. Feerer located the documents which identified and supported

27  the shareholder transactions. However, as of the last communication, Mr. Feerer was unable to

28  find any such documents. (O'Malley Decl., ¶¶ 7, 12, 14-19).

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

1177667.1                                   14                        Case No. 4:17-CV-00997-KAW
JUDGMENT CREDITOR TMCO, LTD.'S MOTION FOR LEAVE TO AMEND JUDGMENT TO ADD ALTER
EGO DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES

1    To the contrary, the documents which have been produced show that GLES, LLC was the

2  only true shareholder. GLES, Corp. represented to the IRS on its Schedule G "Information on

3  Certain Persons Owning the Corporation's Voting Stock" that it only has one shareholder, GLES,

4  LLC, with 100 percent of the voting shares. (O'Malley Decl. ¶31). Per the interrogatory responses,

5  GLES, LLC's shares were in exchange for non-cash consideration. Accordingly, there is no

6  evidence that GLES, Corp. ever received capital through third party funding from which it could

7  pay its liabilities.

8    Finally, in anticipation of the enforcement of the Arbitration Award, Mr. Feerer has acted

9  to ensure that GLES, Corp. no longer has any assets against which this liability could be satisfied.

10  Mr. Feerer testified that he had shut down the last bank account held under GLES Corp's name in

11  2017.  (Ex. "B" to Decl. of Diedrich at 58:25-30). On or about the same period he ensured that any

12  intellectual property rights held by GLES Corp. were terminated – for no apparent business reason

13  other than to prepare GLES Corp. for collection proceedings. (Ex. "A" to Decl. of Diedrich at 7:2-

14  9:2). Finally, despite holding out that he had personally undertaken to subsidize the corporations

15  operations prior to the Arbitration Award, the evidence is that this revenue stream has also dried

16  up. Notwithstanding the lack of revenue,  Mr. Feerer continued to charge personal costs to the

17  corporation well into 2017. It also appears from the lack of any records produced from after 2016,

18  that GLES Corp. has also stopped retaining accountants or advisors to file tax returns and other

19  necessary filings.

20    Just as the enforcement proceedings exposed GLES, Corp.'s lack of funds to pay for goods

21  in 2012, the evidence, or rather lack thereof, shows that GLES, Corp. was likely never funded or

22  capitalized throughout its existence, thereby undermining any argument it operated as a bona fide

23  business entity. Accordingly, this court should disregard its corporate status.

24  **C.**    **There Was No True Separation Between Mr. Feerer and GLES, Corp.**

25    The evidence shows that Mr. Feerer attributed payment for his personal expenses and

26  funds to GLES, Corp. Furthermore, there was such commingling of funds between Mr. Feerer's

27  personal funds and GLES Corp.'s account that there does not appear to be any true separation

28  between the corporation and Mr. Feerer or his family trust. Rather, as confirmed in GLES, Corp.'s

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

1177667.1                                    15                          Case No. 4:17-CV-00997-KAW
JUDGMENT CREDITOR TMCO, LTD.'S MOTION FOR LEAVE TO AMEND JUDGMENT TO ADD ALTER
EGO DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES

1   July 1, 2019 meet and confer letter, Mr. Feerer, not GLES, Corp., is the true client in this case.

2   There was plenty of opportunity for financial transactions between GLES Corp. and Mr.

3   Feerer's personal accounts to be fluid. There is no evidence, for example, that Mr. Feerer ever had

4   formal authorization to act for GLES, Corp. as a director or officer – he just simply undertook to

5   define his own mandate. No evidence was produced showing that any oversight of Mr. Feerer's

6   actions was undertaken, such as by an independent board of directors. It also appears that despite

7   some pretense to the contrary, there were no arms-length investors or shareholders who had any

8   say in the operations of the company. Shareholder meeting minutes and records of formal votes for

9   director positions were absent from the production. As noted above, the evidence is fairly

10  conclusive that GLES Corp., did not have shareholders beyond the Feerer controlled GLES LLC,

11  which meant that he had total control.

12  Mr. Feerer was the contact for the corporation's CPA, and personally responsible for

13  finalizing and submitting GLES, Corp.'s federal tax returns. He was the individual responsible for

14  all aspects of GLES, Corp.'s transaction with TMCO, both before and during the arbitration.  Mr.

15  Feerer participated in formation of the contract and was the contact for GLES, Corp. regarding

16  acceptance and payment of goods, including when he demanded his travel be paid for by TMCO

17  to inspect the goods. (Toncheva Decl. ¶¶ 3-4, 10, 17-18). During arbitration, Mr. Feerer was the

18  representative for GLES, Corp. [Dckt. Entry 1-4, p. 50].  Now, post-arbitration, Mr. Feerer

19  remains the client representative for GLES, Corp., signing all verifications and working directly

20  with GLES, Corp.'s counsel in discovery. And, most importantly, Mr. Feerer, apparently has the

21  power to and is considering putting GLES, Corp. into bankruptcy.

22  "The first unity of interest factor is whether the entities have commingled their assets.

23  Courts find that a plaintiff has sufficiently demonstrated commingling where the evidence shows

24  that the related companies transfer assets among themselves for no ascertainable reason." *Stewart*

25  *v. Screen Gems-EMI Music, Inc.* 81 F. Supp. 3d 938, 954 (N.D. Cal. 2015).

26  GLES, Corp. has represented in discovery that Mr. Feerer personally funded the company

27  with loans from his personal account throughout its existence. (Ex. "A" to O'Malley Decl.). Mr.

28  Feerer also testified that the only income identified in the bank statement was from loans from Mr.

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

1177667.1

16

Case No. 4:17-CV-00997-KAW

JUDGMENT CREDITOR TMCO, LTD.'S MOTION FOR LEAVE TO AMEND JUDGMENT TO ADD ALTER
EGO DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES

1  Feerer or the family trust funding the corporation, not from business operations. (Ex. "B" to Decl.

2  of Diedrich. at 97:11-25, 102:1-103:6). Therefore, it appears Mr. Feerer regularly financed GLES,

3  Corp.[4]

4        While his testimony was vague as to when, how much, and to whom certain loans were

5  made, it established that Mr. Feerer personally had access to GLES, Corp.'s account and regularly

6  transferred funds on his own accord so he could continue to pay for his personal expenses through

7  GLES, Corp.

8        The minimal records which ultimately were produced by GLES, Corp. are dubious and

9  uncertain in their authenticity. Even still, taking the records at face value, the documents indicate

10  that Mr. Feerer attributed personal expenses to GLES, Corp.'s account. The evidence, in the form

11  of bank statements, shows payments made by GLES Corp. to Direct TV and PG&E. (*Id.* at

12  104:2-14). The corporation's principal place of business is 220 Lombard Street, No. 823, Mr.

13  Feerer's residential address. (Ex. "A" to Diedrich Decl. at 34:21-25; see also Ex. "P" to Decl. of

14  O'Malley). The evidence thus shows the cable and utility payments were for Mr. Feerer's home.

15  All the while, the company had purportedly been insolvent and operating at a net loss.

16        Despite making zero business transactions in 2012, the "profit and loss" document for that

17  year identified expenses like $129,000 in credit card expenses, which Mr. Feerer claimed was for

18  travel; rent for Russian and U.S. office space, rented by entities other than GLES Corp.; and,

19  health insurance for Mr. Feerer, his wife, and three employees. (Ex. "B" to Diedrich Decl., at

20  67:19-68:13). However, it is questionable if GLES, Corp. even had any employees as no

21  employment agreements were ever produced showing that GLES Corp. had hired and/or

22  compensated any formal employees.

23        Other expenses found amongst the incomplete and partial records obtained in discovery

24  include a debit withdrawal to Anthem Blue Cross for health insurance for Mr. Feerer and his wife,

25  and payments to BMW Financial Services for cars leased by the corporation for his use. (*Id.* at

26  99:1-23, 100:18-101:10). The same statement also includes line items indicating payment for a

27  ———————————

28  [4] However, Mr. Feerer could produce no documentation to substantiate these loans.

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

1177667.1                                        17                              Case No. 4:17-CV-00997-KAW
JUDGMENT CREDITOR TMCO, LTD.'S MOTION FOR LEAVE TO AMEND JUDGMENT TO ADD ALTER
EGO DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES

1   Bank of America Business Card Bill, and a Personal Card. (Exhibit 6 of Ex. "B" to Diedrich

2   Decl.). Mr. Feerer could not explain if there was a difference between these accounts, but

3   confirmed the personal card was used for personal expenses. (Ex. "B" to Diedrich Decl., at 100:1-

4   18).

5           Lastly, GLES, Corp.'s lack of responses and inability to produce supporting documents

6   concerning the basic formation of the corporation, i.e. shareholder statements, meeting minutes,

7   fully audited tax returns and authenticated financial statements, undermines the representation that

8   this corporation was maintained as an independent business separate from Mr. Feerer's interests.

9   **D.      Mr. Feerer Operated GLES, Corp., and GLES, LLC As A Single Enterprise**

10          The evidence indicates that Mr. Feerer operated both GLES, Corp. and his other company,

11  GLES, LLC, as a single business enterprise. Accordingly, TMCO seeks to also add GLES, LLC as

12  a debtor to the judgment.

13          The court in *Toho-Towa Co.,* 217 Cal. App. 4th 1096 (Cal. Ct. App. 2013), held:

14          "[W]here there is "such domination of finances, policies and practices that the

15          controlled corporation has, so to speak, no separate mind, will or existence of its

16          own and is but a business conduit for its principal", the affiliated corporations may

17          be deemed to be a single business enterprise, and the corporate veil pierced. "Under

18          the 'single business enterprise' doctrine, separate corporations may operate with

19          integrated resources in pursuit of a single business purpose." "The 'single-business-

20          enterprise' theory is an equitable doctrine applied to reflect partnership-type

21          liability principles when corporations integrate their resources and operations to

22          achieve a common business purpose." " *Id.* at 1107–08 (internal citations omitted).

23          "The alter ego doctrine is premised on the theory that the person in charge of a single

24  enterprise consisting of several alter ego entities is typically concerned with the total amount of his

25  assets held by all entities, not with the specific amount held by any particular one." *Greenspan v.*

26  *LADT, LLC*, 191 Cal. App. 4th 486, 510 (Cal. Ct. App., 2010). Here, all evidence produced by

27  GLES, Corp. indicates that Mr. Feerer treated GLES Corp. and GLES, LLC as a single enterprise,

28  through which he mixed and mingled personal assets.

MUSICK, PEELER
& GARRETT LLP
ATTORNEYS AT LAW

1177667.1                                         18                         Case No. 4:17-CV-00997-KAW
JUDGMENT CREDITOR TMCO, LTD.'S MOTION FOR LEAVE TO AMEND JUDGMENT TO ADD ALTER
EGO DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES

1   GLES, LLC is reported as owner of 100 percent of voting shares of GLES, Corp. At all

2   relevant times, Mr. Feerer controlled and still controls all business aspects of both GLES, Corp.

3   and its parent company, GLES, LLC. Mr. Feerer is identified as Chief Executive Officer of GLES,

4   Corp.'s filings with the secretary of state. (Ex. "P" to Decl. of O'Malley). Likewise, he is listed as

5   president of GLES, LLC on documents filed with the Secretary of State of California. (Ex. "Q" to

6   Decl. of O'Malley). In addition, both GLES, Corp. and GLES, LLC list Svetlana Kamyshanskaya,

7   as the agent for service of process. (Exs. "P" and "Q" to O'Malley Decl.). Before her, GLES,

8   Corp.'s former attorney, Mr. Nelson, was the agent for service of process for both. (*Ibid.*).

9   In addition, the sparse records which were produced by GLES, Corp. indicated several

10  large loans were made to or from GLES, LLC and GLES, Corp over the years. A GLES, Corp.

11  accounting statement regularly identified loans purportedly to and/or from GLES, LLC. (Ex. "N"

12  to O'Malley Decl.) Mr. Feerer testified that share purchases and loans identified in the profit and

13  loss documents as from GLES, LLC were really from his family trust – the notations and record

14  keeping attributing them to GLES LLC notwithstanding (Ex. "B" to Diedrich Decl., p. 62:15-

15  63:2;78:17-79:9) . This testimony infers that GLES, LLC and Mr. Feerer's family trust are one

16  and the same.

17  In addition, the information filed with the Secretary of State of California for GLES, LLC

18  lists its business address as 220 Lombard Street, Suite 823, San Francisco, CA 94111. (O'Malley

19  Decl. ¶¶36-37; see also Ex. "Q" to O'Malley Decl.) This is the same business address provided for

20  GLES, Corp., and Alex Feerer and Maya Feerer's personal address. (O'Malley Decl. ¶¶34-35; See

21  also Ex. "P" to O'Malley Decl.).

22  GLES, LLC was the 100 percent owner of GLES, Corp. The evidence further showed that

23  Mr. Feerer would transfer money between the two corporations regularly so that he could continue

24  to attribute personal expenses to GLES, Corp. Mr. Feerer has represented that he personally made

25  deposits and loans to the Corporation's account. (Ex. "A" to O'Malley Decl.; See also Ex. "B" to

26  Diedrich Decl. at 102:1-103:3).

27  Mr. Feerer further testified that currently, neither GLES, Corp. nor GLES, LLC conducts

28  any business. (Ex. "A" to Diedrich Decl., at 8:5-20).  The lack of corporate records further

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

1177667.1                                    19                    Case No. 4:17-CV-00997-KAW
JUDGMENT CREDITOR TMCO, LTD.'S MOTION FOR LEAVE TO AMEND JUDGMENT TO ADD ALTER
EGO DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES

1   undermines any claim that GLES, Corp. was a valid business with actual shareholders, employees,

2   and business transactions. Indeed, it seems Mr. Feerer controlled both GLES, Corp. and GLES,

3   LLC solely on behalf of and to benefit himself to use the corporate identity of these companies as

4   a conduit through which he could conduct speculative ventures like the subject contract with

5   TMCO and purported sale to Moscow Regional Government, while shielding his personal assets

6   from liability.

7       For these reasons, GLES, LLC should also be added to the judgment as a debtor to ensure

8   the judgment entered against GLES, Corp. is paid. If GLES, LLC is not added as a corporation,

9   Mr. Feerer may place his assets and funds into this other corporation to further shield himself from

10  liabilities incurred when he negotiated and entered into a contract for GLES, Corp. with TMCO,

11  despite GLES, Corp.'s lack of assets or funding to fulfill any of the obligations of the contract.

12                                          IV.

13             **FAILURE TO DISREGARD THE CORPORATE IDENTITY**

14                    **WILL RESULT IN INJUSTICE**

15      The alter ego doctrine requires both a showing of unity in interest, and inequitable result.

16  "To prevail on a claim of "alter ego," the third party must show (1) there is such a unity of interest

17  that the separate personalities of the corporations no longer exist; and (2) inequitable results will

18  follow if the corporate separateness is respected." *Tomaselli v. Transamerica Ins. Co.* 25 Cal.

19  App. 4th 1269, 1285 (Cal. Ct. App. 1994). As discussed above, Mr. Feerer personally and through

20  his other company, GLES, LLC, had unity of interest of GLES, Corp. such that separate

21  personalities do not exist. Now, if GLES, Corp. retains its corporate identity in this case, fraud and

22  injustice will result.

23      Mr. Feerer entered into a contract with TMCO with full knowledge that at the time the

24  contract was executed, his company, GLES, Corp. did not have adequate funds to pay for the

25  goods. Mr. Feerer induced TMCO to manufacture bespoke goods per the specifications of the

26  contract but did not inform TMCO  that the venture was a highly speculative one, or that TMCO

27  would bear the risk of an eventual buyer failing to place an order. TMCO and GLES, Corp. were

28  the only parties to the contract, and GLES, Corp. represented that it would take delivery of or pay

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

1177667.1                                           20                          Case No. 4:17-CV-00997-KAW

JUDGMENT CREDITOR TMCO, LTD.'S MOTION FOR LEAVE TO AMEND JUDGMENT TO ADD ALTER
EGO DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES

1   TMCO for the goods for its own account. (Toncheva Decl. ¶¶3-4,10, 14, 23-25). However, when

2   the goods were ready for delivery, GLES, Corp. failed to take possession or pay for the same,

3   alleging that they were non-conforming – a claim that was ultimately ruled to be without merit by

4   the Arbitrator. Rather, GLES simply did not have the capital to follow through with the transaction

5   , and according to Mr. Feerer, it never did.

6       TMCO not only suffered financial harm as the result of GLES, Corp.'s breach, but

7   incurred additional costs in bringing the arbitration and present enforcement proceedings. (*Id.* at ¶

8   27). All the while, Mr. Feerer made misrepresentations about GLES, Corp.'s assets and capital,

9   and now threatens bankruptcy to further protect himself from liabilities he knowingly incurred.

10  However, GLES, Corp.'s purported financial distress is not the result of a downturn in market, but

11  rather the result of a Mr. Feerer's failure to ever adequately fund GLES, Corp. or treat it like a

12  separate entity.

13      It is self-evident that the balance of risks in a transaction affect the price, terms and

14  willingness of a party to contract. Mr. Feerer never disclosed to TMCO that GLES was financially

15  unable to perform the deal from the outset, and that the project was entirely speculative.  The

16  contract he signed with TMCO makes no reference to that, and indeed even up and through the

17  Arbitration GLES continued the charade that it had intended to actually purchase the equipment

18  for its own account. Then, when an arbitration award was entered against GLES, Corp. for almost

19  two million dollars, GLES, Corp. destroyed many of its records which would allow TMCO to

20  pursue payment of the judgment by the GLES, Corp. and now threatens bankruptcy. Thus it is

21  only here, and at this late stage, that TMCO  has discovered that Mr. Feerer predicated the entire

22  transaction on the highly uncertain possibility that a third-party buyer would materialize and

23  purchase the equipment, from which Feerer would have presumably earned a significant margin.

24      By concealing the financial insolvency of GLES, Corp. from the outset of the transaction,

25  Feerer engaged in fraud and misrepresentation, effectively shifting any risk for the likely result

26  that a buyer would not purchase  the equipment  to TMCO. No reasonable business operator

27  would contract knowing that the chances it will be paid are subject to such uncertainties, which is

28  why GLES did not disclose the true nature of the deal to TMCO and pretended to have the

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

1177667.1                                              21                    Case No. 4:17-CV-00997-KAW
JUDGMENT CREDITOR TMCO, LTD.'S MOTION FOR LEAVE TO AMEND JUDGMENT TO ADD ALTER
EGO DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES

1   wherewithal to buy the equipment for its own account. If not fraudulent, Feerer's actions are at

2   least highly inequitable insofar as he induced TMCO to engage in the highly risky venture of

3   building equipment on speculative terms.

4       Mr. Feerer hopes to continue to perpetuate his fraudulent conduct  and force TMCO to

5   absorb the risk it never contracted for by now using GLES as a shield against any personal

6   responsibility for his misrepresentations. By ensuring GLES is without assets and is nothing more

7   than a hollowed out corporate carcass, Mr. Feerer hopes that TMCO and possibly others, will

8   simply give up on pursuing legally recognized debts, such as the Arbitration Award, and

9   essentially eat the loss.  This court should not reward such behavior. Allowing Mr. Feerer and his

10  other company, GLES, LLC, to remain unattached to this judgment will perpetuate Mr. Feerer's

11  fraudulent conduct and misrepresentations, and allow him to shield his personal assets from

12  liability through the use of a sham corporation.

13  **V.**

14  **MR. FEERER AND GLES, LLC SHOULD BE**

15  **ADDED TO THE JUDGMENT**

16      There is no dispute that Mr. Feerer was personally involved not only in the creation and

17  execution of the contract, but also in the underlying arbitration. Mr. Feerer was the client contact

18  throughout arbitration, was identified in the correspondence included in the Arbitration's Terms of

19  Reference, and specifically cited to throughout the Arbitrator's Final Award.

20      Indeed, it appears Mr. Feerer was the true client in this matter. Mr. Feerer's control of the

21  litigation has continued still today. Mr. Feerer signed the verifications to all discovery served to

22  GLES, Corp. in the debtor examination and discovery process. Mr. Feerer exercised control over

23  the underlying arbitration and continues to represent GLES, Corp. today. Therefore any due

24  process concerns in adding him as a judgment debtor are satisfied.

25      There is also no due process concern in adding GLES, LLC as a debtor to the judgment as

26  its interests were defended by Mr. Feerer as a single enterprise. As already discussed, Mr. Feerer

27  operated both GLES, Corp. and GLES, LLC as a single enterprise. There exists no conflict

28  between these businesses, both controlled by Mr. Feerer. Therefore in Mr. Feerer's representation

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

1177667.1
22
Case No. 4:17-CV-00997-KAW

JUDGMENT CREDITOR TMCO, LTD.'S MOTION FOR LEAVE TO AMEND JUDGMENT TO ADD ALTER
EGO DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES

and control of the arbitration on behalf of GLES, Corp., he also represented the interests of GLES, LLC.

**VI.**

**THE COURT SHOULD SANCTION GLES, CORP. AND MR. FEERER AND AWARD TMCO, LTD. COSTS FOR MOTION**

The Court has inherent authority to order attorney's fees where a party has acted in bad faith. As stated in the Supreme Court decision, *Chambers v. NASCO, Inc.* 501 U.S. 32, (U.S. 1991), "a court may assess attorney's fees when a party has ' "acted in bad faith, vexatiously, wantonly, or for oppressive reasons. In this regard, if a court finds 'that fraud has been practiced upon it, or that the very temple of justice has been defiled', it may assess attorney's fees against the responsible party, as it may when a party 'shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order.'" *Id.* at 45-46 (internal citations omitted).

As discussed above, GLES, Corp., and specifically, Mr. Feerer, engaged in fraudulent conduct which has resulted not only in a breach of contract and resultant damages, but additional costs in bringing the underlying arbitration and now enforcement proceedings. Accordingly, TMCO asks that this Court use its inherent powers to issue sanctions against GLES, Corp. and Mr. Feerer to reimburse TMCO for the costs it has incurred in bringing the enforcement proceedings since final judgment was entered against GLES, Corp. in November 2017, up to the Subject Motion. The attorney's fees and costs which have been incurred in enforcement proceedings currently $87,340.36. (O'Malley Decl. ¶¶ 39-40).

**VII.**

**CONCLUSION**

Judgment Creditor respectfully requests this Motion be granted pursuant to Federal *Rule of Civil Procedure* 69 and CCP §187, and the judgment be amended to add Mr. Feerer and GLES, LLC as debtors.

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

1177667.1                           23                        Case No. 4:17-CV-00997-KAW

JUDGMENT CREDITOR TMCO, LTD.'S MOTION FOR LEAVE TO AMEND JUDGMENT TO ADD ALTER EGO DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES

1  | DATED: November 6, 2019                 MUSICK, PEELER & GARRETT LLP

2

3                                           By:   */s/ Nathan D. O'Malley*
                                                  Nathan D. O'Malley
4                                                 Peter J. Diedrich
                                                  Attorneys for Judgment Creditor
5                                                 TMCO LTD

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

1177667.1                                    24                    Case No. 4:17-CV-00997-KAW

JUDGMENT CREDITOR TMCO, LTD.'S MOTION FOR LEAVE TO AMEND JUDGMENT TO ADD ALTER
EGO DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES

1

## CERTIFICATE OF SERVICE

2  I, Margaretha Ayers, hereby certify that on November 6, 2019, I electronically filed the foregoing

3  document described as **JUDGMENT CREDITOR TMCO, LTD'S MOTION FOR LEAVE**

4  **TO AMEND JUDGMENT TO ADD ALTER EGO DEFENDANTS; MEMORANDUM OF**

5  **POINTS AND AUTHORITIES** with the Court Clerk of

6  the United States District Court Northern District of California by using the Court's

7  CM/ECF system.

8          Participants in the case who are registered CM/ECF users will be served by the

9  CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by

10  mail or by other means permitted by the court

11  rules.

12

13          I also certify the documents and a copy of the Notice of Electronic Filing was served, *Via*

14  *U.S. Mail,* on the following individual and company that are not parties to the case, and **non-**

15  CM/ECF participants:

16  Alex M. Feerer                        Svetlana Kamyshanskaya
    220 Lombard Street, Suite 823         555 California Street, Suite 4925
17  San Francisco, CA 94111               San Francisco, CA 94104

18                                        *As Agent for Service of Process for Green Light*
19                                        *Energy Solution, LLC*

20          I declare under penalty of perjury under the laws of the United States of America that the

21  foregoing is true and correct and that I am employed in the office of a member of the bar of this

22  Court at whose direction the service was made.

23          Executed on November 6, 2019, at Los Angeles, California.

24

25

26  _____
    Margaretha Ayers

27

28

MUSICK, PEELER
& GARRETT LLP

1186806.1