**MUSICK, PEELER & GARRETT LLP**
ATTORNEYS AT LAW
ONE WILSHIRE BOULEVARD, SUITE 2000
LOS ANGELES, CALIFORNIA 90017-3383
TELEPHONE (213) 629-7600
FACSIMILE (213) 624-1376

Nathan D. O'Malley (State Bar No. 212193)
n.omalley@mpglaw.com
Peter J. Diedrich (State Bar No. 101649)
p.diedrich@mpglaw.com
Rebecca S. Hummel (State Bar No. 311742)
r.hummel@musickpeeler.com

Attorneys for TMCO LTD.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| TMCO LTD., a Bulgarian Company,<br><br>    Petitioner,<br><br>vs.<br><br>GREEN LIGHT ENERGY SOLUTIONS R&D CORP., a California corporation,<br><br>    Respondent. | CASE No. 4:17-CV-00997-KAW<br><br>**DECLARATION OF MRS. DENKA TONCHEVA IN SUPPORT OF JUDGMENT CREDITOR TMCO, LTD'S MOTION FOR LEAVE TO AMEND JUDGMENT TO ADD ALTER EGO DEFENDANTS**<br><br>[Served concurrently with Notice of Motion; Memorandum of Points & Authorities; Declaration of Nathan O'Malley; Declaration of Peter Diedrich; [Proposed[]] Order]<br><br>Date of Motion:  January 16, 2020<br>Time of Motion:  1:30 p.m.<br>Courtroom: Hon. Kandis A. Westmore |

I, DENKA TONCHEVA, hereby declare as follows:

1. I am the CEO of TMCO, Ltd ("TMCO"). The matters set forth below are known to me personally, and if called to testify in this matter, I could and would competently testify to each of them.

2. TMCO is a company incorporated in Bulgaria under Bulgarian Law. TMCO specializes in building heavy machine equipment.

3. On February 6, 2012, TMCO entered into a sales agreement (the "Contract") on

behalf of TMCO with Green Light Energy Solutions, R&D Corp. ("GLES, Corp."). The only parties to the Contract were the Seller, TMCo, Ltd., and the Buyer, GLES, Corp. On this same date, the parties also executed two other documents entitled "Special Terms of Sale of Products No. 1" and "Specification No. 1," incorporated into the agreement Per the terms of the contract, TMCO agreed to produce equipment parts ("the Products") made to the specifications in the Contract, and GLES, Corp. was to purchase the same. Per the specifications, the Products were specifically designed and manufactured as part of a system for a waste conversion pyrolysis machine.

4. This Contract was the result of several meetings between the parties to negotiate the terms of the Contract. I was personally involved in these negotiations, as was Mr. Feerer. At no point during the Contract negotiations did Mr. Feerer or any representative of GLES, Corp. mention that full payment for the equipment would be contingent on a third-party purchaser.

5. Per the Contract terms, the Products were to be produced and delivered in 14 (fourteen) identical sets, each of which could be used in an individual waste conversion pyrolysis machine. The price per set of the Products was set at EUR 346,123.75, amounting to a total contract price for the 14 sets of EUR 4,845,732.50. Upon completion of a set of the Products, TMCO was to produce a written notice of manufacturing completion to GLES, Corp. Within 10 (ten) calendar days from receipt of TMCO's written notice of manufacturing completion, GLES, Corp. was then required to send a written notice of acceptance of the Products, specifying the date of arrival for the loading of the Products. GLES, Corp. was also required to pay an advance of 25% of the purchase price prior to TMCO initiating the manufacturing process; the balance 75% was payable within five days of receiving a written notice of manufacturing completion.

6. On February 7, 2012, GLES, Corp. paid the advance payment of EUR 86,530.94 for the first set of Products.

7. Upon receipt of the advance payment, TMCO began production of the first two sets of Products. TMCO successfully completed manufacturing the first two sets of the Products in July 2012. In undergoing the manufacture of the first two sets of Products, TMCO incurred expenses for cost of materials to prepare the Products in a total amount of EUR 203,400.40.

8. On July 20, 2012, TMCO sent a written notice of manufacturing completion in accordance with the Contract, inviting GLES, Corp. to send its instructions for taking delivery of these two sets. However, GLES, Corp. failed to comply with its payment obligations, and did not send a written notice of acceptance of the Products to TMCO.

9. GLES, Corp. failed to make payment for the remaining 75% of the Products, nor did it send a "written notice of acceptance of Products" to TMCO per the time required by the Contract. Accordingly, on July 27, 2012, TMCO sent a written notice to GLES, Corp., urging GLES, Corp. to fulfill its obligations under the contract.

10. On October 25, 2012, Mr. Feerer wrote an email to TMCO, requesting a grace period of approximately 3 weeks to make payment. In a letter dated November 20, 2012, GLES, Corp. asked for an additional grace period for its payment obligations, but made clear that it did not decline responsibility for its obligations under the Contract, but requested an additional reasonable term to fulfill its obligations.

11. TMCO agreed to GLES, Corp.'s request, and TMCO and GLES, Corp. executed an amendment to the Contract on November 22, 2012, allowing GLES, Corp. additional time to pay its 25% advance for the Products. This amendment extended the date of delivery for the first set of Products to March 31, 2013, and for the second set of Products to April 30, 2013.

12. As part of the amendment to the Contract, GLES, Corp. also requested that certain additional parts be added EUR 15,298.43 to the Products, thus increasing the total price for the Products. As a result the total price for the 14 sets of Products was adjusted to EUR 5,194,884.75. TMCO's profit margin for each set of Products was EUR 72,041.98.

13. On December 18, 2012, TMCO sent GLES, Corp. a new "written notice of manufacturing completion" for the first two sets of Products, now complete with the additional parts requested by GLES, Corp. per the addendum to the Contract.

14. By January 30, 2013, GLES, Corp. had yet to respond TMCO's written notice of manufacturing completion. Accordingly, TMCO wrote to GLES, Corp. again requesting payment. GLES, Corp. responded by a letter of that same date, stating it agreed to properly accept the Products and make payment. However, months passed, and still GLES, Corp. did not make any

1  payment, or otherwise contact TMCO regarding acceptance and/or payment of the Products.

2      15.    On November 22, 2013, after months of radio silence from GLES, Corp., GLES, Corp. sent a letter requesting that TMCO return all confidential communication. At this point, TMCO began to worry that GLES, Corp. no longer had any intent to perform its obligations under the Contract.

    16.    On January 22, 2014, TMCO's counsel sent a final notice to make payment to GLES, Corp., further stating TMCO's position that if GLES, Corp. did not confirm it will fully comply with its obligations by February 10, 2014, TMCO would treat this failing as unlawful termination of the Contract.

    17.    On January 23, 2014, Mr. Feerer wrote an email to Mr. Philippe Rombaut, the main shareholder of TMCO, accusing my company of racketeering he and his company. Mr. Philippe Rombaut responded and invited Mr. Feerer to come take photos of the Products themselves. Mr. Feerer responded to the email saying he would only come out and inspect the products if TMCO paid for his flight.

    18.    Later that same day, Mr. Philippe Rombaut provided photographs to Mr. Feerer showing the two sets of Products that were ready for acceptance. He then engaged in a Skype conversation with Mr. Feerer regarding the Products.

    19.    Over the following months, GLES, Corp. and TMCO exchanged further correspondence concerning GLES, Corp.'s stated intent to fulfill its obligations of the Contract, but failure to do so.

    20.    Despite the agreed extension of time, GLES, Corp. failed to make any additional payments for the Products. The only payment ever made by GLES, Corp. for the Contract was its initial advance payment made in February 2012 for EUR 86,530.94.

    21.    As a result of GLES, Corp.'s apparent intent to not make payment for the Products, TMCO initiated arbitration proceedings to rescind the Contract.

    22.    During arbitration proceedings, GLES, Corp. argued for the first time that it did not make payment or accept the Products due to compliance issues. At no point in the arbitration proceedings did Mr. Feerer or GLES, Corp. mention a third party purchaser of the goods or

inability to make payment as the reason it did not accept and perform per the terms of the Contract.

23. Throughout my dealings with Mr. Feerer and GLES, Corp. regarding GLES, Corp.'s failure to take possession and pay for the Products, Mr. Feerer never mentioned any third party purchaser's failure to pay for the Products as a reason for failing to take possession of the same.

24. It was not until after Mr. Feerer's testimony from his second examination on November 29, 2018 that I learned of Mr. Feerer's inability to pay for the TMCO Products and reliance on a third party purchaser to finance GLES Corp.'s ability to make payments under the contract.

25. TMCO had never been advised that GLES, Corp.'s ability to make payment for the Products was contingent upon this third party purchaser, Moscow Regional Government, purchasing the Products. Mr. Feerer never disclosed this third party transaction, nor did TMCO ever agree to take on any risk associated with the same.

26. As the arbitrator determined as a matter of law, TMCO was entitled to contractual damages incurred as a result of GLES, Corp.'s failure to fulfill its obligations per the Contract. These include, but are not limited to, the lost profit margin, costs incurred in purchasing materials to manufacture the completed sets of Products, as well as the remainder of the contract price for the completed Products, plus interest. GLES, Corp. has failed to make any payment on the arbitration award.

27. In addition to the lost profits and costs incurred in performing the Contract, TMCO incurred costs to bring the underlying arbitration against GLES, Corp. Now, in seeking to enforce the arbitration, TMCO has continued to incur costs for enforcement proceedings.

28. I agree that a facsimile transmission or electronic (PDF) of my signature shall be as binding as the original.

///
///
///

1  I declare under penalty of perjury under the laws of the State of California that the
2  foregoing is true and correct.
3  Executed this 6th day of November, 2019 in Debelets, Bulgaria.
4  DATED: November 6, 2019

By: _____/s/ *Denka Toncheva*_____
Denka Toncheva
CEO for TMCO LTD.

# CERTIFICATE OF SERVICE

I, Margaretha Ayers, hereby certify that on November 6, 2019, I electronically filed the foregoing document described as **DECLARATION OF MRS. DENKA TONCHEVA IN SUPPORT OF JUDGMENT CREDITOR TMCO, LTD'S MOTION FOR LEAVE TO AMEND JUDGMENT TO ADD ALTER EGO DEFENDANTS** with the Court Clerk of the United States District Court Northern District of California by using the Court's CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I also certify the documents and a copy of the Notice of Electronic Filing was served, *Via U.S. Mail,* on the following individual and company that are not parties to the case, and **non-CM/ECF participants:**

Alex M. Feerer
220 Lombard Street, Suite 823
San Francisco, CA 94111

Svetlana Kamyshanskaya
555 California Street, Suite 4925
San Francisco, CA 94104

*As Agent for Service of Process for Green Light Energy Solution, LLC*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 6, 2019, at Los Angeles, California.

_____
Margaretha Ayers

MUSICK, PEELER
& GARRETT LLP

1186806.1

**PLAINTIFF TMCO, LTD'S CERTIFICATE OF SERVICE**